Report of Committee Presented.
In Assembly, February 1st, 1851.
Mr. Bishop, from the committee on privileges and elections, to ■which was referred the petition of John Underwood, for a seat in this House in the place of Samuel Jayne, Jr., presented a report, upon which Mr. J. Benedict offered the following resolution, to wit:
Resolved, That the chairman of the committee on privileges and elections, together with Mr. Maurice, one of the associate members of said committee, be authorized to repair to Yates county for the purpose of taking further testimony in the case of John Underwood, who is contesting a seat in this House, and that he be authorized to employ a clerk and such other persons as may be necessary to procure said testimony.
Mr. Maurice offered the following amendment, which was accepted by Mr. J. Benedict, to wit:
Resolved, That the co.mmittee on privileges and elections be instructed to report in writing the facts in relation to the claim on the part of John Underwood to the seat in this House now held by Mr. Jayne.
Mr. Speaker put the question whether the House would agree to the said resolution, and it was determined in the affirmative.
Assembly Journal, 1851, vol. 1, pages 241, 248.
*242 Repokt oe Majority oe Committee.
In Assembly, February 13i/i, 1851.
Mr. J. Benedict, in behalf of the majority of the committee on privileges and elections, to which was referred the petition of John Underwood for a seat in this House in the place of Samuel Jaynes, Jr., reported as follows, to wit:
Report of the Majority of the Committee on Privileges and Elections, on the Claim oe Mr. Underwood to the Seat now Occupied by Mr. Jayne.
The majority of the committee on privileges and elections, to which was referred the petition of John Underwood, claiming that he is entitled to the seat now occupied by Samuel Jayne, of Yates county, beg leave to report the proceedings had before your committee in the premises:
That at a meeting of said'committee Mr.«Underwood and Mr. Jayne attended, and that Mr. Underwood was instructed by said committee to make out and serve upon the committee and Mr. Jayne his allegation, which if substantiated by proof, would entitle him to the seat; and Mr. Jayne was also instructed by said committee to answer the same. That in pursuance of such instruction, Mr. Underwood made out and served, as directed, a paper, of which the following is a copy, to wit:
“ To Samuel Jayne, Jr., Esq.: '
“ Sir. — Please take notice, that I claim the seat in the Assembly which you now occupy, on the ground that there were about fifty-five votes, called democratic votes, cast in the second district, in the town of Jerusalem, in said county of Yates, for myself for member of Assembly in said county, that were not counted or allowed for me, and which, if allowed, elects me as a member from said county instead of yourself.
“ Yours, etc.,
Marked A. “ JOHN UNDERWOOD.”
Dated, January 23, 1851.
That Mr. Jayne interposed the following answer, to wit:
“ John Underwood, Esq.:
“ Take notice that the allegations set forth in the notice you have served on me, claiming my seat as member of Assembly, is not true.
Marked B. SAMUEL JAYNE, Jr.”
January 24, 1851.
*243 That Mr. Underwood then presented to the committee, as evidence, the following paper, to wit: — “ Of State New York, Yates county, ss. We the undersigned, of Jerusalem in said county, being duly sworn, doth each for himself depose and say, that on the fifth day of November, 1850, in election district No. two in the town of Jerusalem, he voted for John Underwood for member of Assembly; and further says not. (Then follows the name of Chester 0. Arnold and one hundred and fifty-three others. The conclusion of the paper is as follows :) I certify that eachnof the above-named persons signed the affidavit, of which the above is a copy, and that I -administered to each of them an oath in the usual form, to wit: That each of the above-named persons voted on the fifth day of November, 1850, in election district No. 2, in the town of Jerusalem, for John Underwood for member of Assembly.
“ NOEMAN T. KIDDEE,
u A Justice of the Peace in and for s'aid county.”
Paper marked No. 1. The introduction of the foregoing paper was objected to by Mr. Jayne, hut received by the committee for future consideration.
Mr. Underwood then offered in evidence the certificate of Eobert Buel a justice of the peace in and for said county of Yates, that he administered an oath to thirty-six persons, (naming them), who testified that on the fifth day of November, 1850, they voted in the second, election district of the town of Jerusalem for John Underwood for member of Assembly. This paper was marked No. 2.
Mr. Underwood also produced in evidence seven separate affidavits, taken before different justices of the peace, of seven different persons having voted in that election district of the town for him for member. These affidavits were marked number 3.
Mi-. Underwood then introduced the affidavit of Andrew B. Angus , and Daniel A. Thomas, in relation to the canvass in said district of the town of Jerusalem. That Mr. Thomas, in his affidavit, testifies, that’he was present at the canvass, saw the votes canvassed, and that Mr..Underwood, in that district, had forty-two' majority over Mr. Jayne. This paper was marked number 4.
Your committee would here state, that according to the canvass made by the inspectors of said election district, Mr. Underwood had but one majority.
Mr. Underwood then introduced affidavits of Phineas Parker and *244 others, showing that he could not procure, at the'town clerk’s office of said town of Jerusalem, the poll list, kept in the second election district of the town of Jerusalem. This paper was marked number 5.
Mr. Underwood also offered an affidavit of P. Parker, in relation to the vote of said town, which affidavit is marked number 6.
Mr. Underwood also introduced a poll list kept by one of the clerks of said election district, which is marked number 7.
Mr. Jayne then introduced his certificate of election, marked number 8. Also the certificate of inspectors of election, district number 2, in Jerusalem, marked number 9 ; and also the county canvassers, certificate of the county of Yates, marked number 10. All of which papers are herewith transmitted.
The committee beg leave to state, that they do not consider the evidence offered on the part of Mr. Underwood as conclusive as to his right to the seat in controversy. But believing that the case demands further investigation, and desirous of doing the parties justice in the matter, would respectfully recommend that a suitable person or persons of the committee be directed to proceed to Yates county and take such further evidence in the case as may be brought forward by the parties, as may be pertinent and proper to be received.
P. M. BISHOP.
JAMES ELY.
ABM. WELDEN.
Dated, February 4iA, 1851.
Assembly Documents, 1851, vol. 1, No. 55. See Documents accompanying same, following the report, pages 4-30.
Ordered, That said report be printed.
Repoet of Minority.
Mr. Morris, from the minority of the committee on privileges and elections, reported as follows, to wit:
Repokt of a Minority of the Committee on Privileges and Elections, on the Petition of, John Underwood, claiming a Seat as Member of Assembly from the County of Yates.
The undersigned, a minority of the committee on privileges and elections, to which was referred the petition of John Underwood, claiming a seat in the Assembly as member from Yates county, now held by Samuel Jayne, Jr., report, that the parties have personally *245 attended before yonr committee. That the petition in substance alleges that the petitioner, John Underwood, received the greatest number of votes cast for member of Assembly at the last general election in the county of Yates, and that the inspectors in the second election district in the town of Jerusalem, made a mistake in the canvass of votes given in that district for member of Assembly. That the petitioner received about one hundred and ninety-nine votes, but only one hundred and seventy-nine votes were counted for him, and that Samuel Jayne, Jr., received one hundred and fifty-eight votes, but that one hundred and seventy-eight votes were counted for him.
At the meeting of yonr committee held on the twenty-third day of January, 1850, it was suggested to both parties, and not being objected to by either of them, the committee directed that the petitioner should set forth in writing, a statement of the grounds on which he claimed to be,entitled to the seat in question, and serve a copy thereof on the sitting member, who should answer the same also in writing-, and serve a copy of his answer on the petitioner ; and adjourned until the next day to give the parties an opportunity to comply with the direction of the committee. ,
At the next session of the committee, held on the twenty-fourth day of Jan nary, 1851, both parties again personally attended and the statement and answer required by the order of the committee were presented. On examining the statement of the petitioner, it appeared that he totally changed the ground on which he claimed his right to the seat in question, as set forth in his petition, and alleged in, substance that about fifty-five democratic votes were given for him as member of Assembly, in election district, No. 2, town of Jerusalem, which were not counted or allowed for him by the inspectors. The sitting member explicitly denied the truth of this allegation. The committee adjourned to January 30,1851, without taking any further action in the matter.
On the adjourned day, both parties personally attended before your committee; Mr. Thompson, one of-the undersigned, being unavoidably absent.
The petitioner offered certain papers for the consideration of the committee, marked respectively No. 1, No. 2, No. 3, No. 4, No. 5, No. 6 and No. 7, the introduction of which was objected to by Mr. Jayne. The committee overruled the objection, and the papers were admitted by Mr. Maurice, one of the undersigned, dissenting.
The following is a correct description of these papers :
*246 No. 1 is a paper without any date, and all in the same handwriting except the signature, “Almon S. Kidder, a justice of peace in and for said comity,” which is apparently in a different hand. The caption of this paper is in these words, viz.: “State of New York, Yates county, ss : We, the undersigned, of Jerusalem, in said county, being duly sworn, doth each for himself depose and say, that on the fifth day of .November, 1850, in election district No. 2, in the town of Jerusalem, he voted for John Underwood, for member of Assembly, and further says not. [Then follows a long list of uames, in all, one hundred and fifty-four, and the paper proceeds:] I certify that each of the above-named persons signed the affidavit of which thp above is a copy, and that I administered to each of them an oath in the r usual form, to wit, that each of the above-named persons voted on the fifth (5) day of November, 1850, in election district No. 2, in the town of Jerusalem, for John Underwood for member of Assembly. Signed, ‘ Almon S. Kidder, a justice of peace in and for said county.’ ”
No. 2 is a paper also without date, all written apparently by the same person and in these words: “State of New York, county of Yates, ss: I certify that I administered an oath in the usual form to .each of the following named persons, to wit [here follows thirty-six names], and that each Bworethat he voted at the last general election held on the 5th day of November, 1850, in election district No. 2, in the town of Jerusalem, in said county, for John Underwood for member of Assembly. Robert Buel, justice of the peace in and for Yates county.”
No. 3 consists of five separate papers pinned together.
The first is an affidavit of Moses Shaw, an illiterate person unable to write his name, and who signs with a x, taken before J. Hewitt, a justice of the peace of Chemung county, on -the 9th of January, 1851, who says, that at the last election he resided iu district No. 2, in Jerusalem, and cast his ballot for John Underwood for member of Assembly from Yates county. There is no certificate by the justice that lie read over or made known the contents of this affidavit to the person making it.
The second is an affidavit of Oliver Babcock, as written in the body of the affidavit, or Babcock as written in the signature, also an illiterate marksman, taken before Andrew Be Groff, a justice of the peace for Steuben c&unty, on loth Januai-y, 1851, who says that he resided in the town of Jerusalem, Yates county, in district No. 2, and that at the last annual election held iu said county for State and *247 county officers, be cast bis ballot for John Underwood, for member of Assembly, in and for said county. There is no certificate by the justice that be read over or made known the contents of this affidavit to the person making it.
The third is an affidavit of Jared Cahoun, taken before John P. Livermore, a justice of Allegany county, on the' 4th January, 1851, who says that he is a resident of the town of Jerusalem, in the county of Yates; was there at the election held in said town of Jerusalem in November last, and that he gave 1ns vote at said election, for John Underwood for member of Assembly for said county, in district No. 2. Jerusalem, the words in italics being written in a different hand from that of the justice or the person signing the affidavit.
The fourth is an affidavit of Lewellyn S. Weaver, taken before A. W. Loop, a justice of the peace for Tioga county (in the commonwealth of Pennsylvania), on the 10th January, 1851, who says that at the last annual election holden for State officers, he resided in the town of Jerusalem, district No. 2, Yates county, New York, and that at such election he cast his ballot for John Underwood for mem-, ber of Assembly for said county.
The fifth is an affidavit of Casper Hibbard, William Yan Dusen and Sylvester Pierce, taken in Steuben county, before a justice of the peace, whose name the undersigned are unable to decipher, on the 11th January, 1851, to the effect that at the last annual election for State and county officers, held in and for the State of New York, they were voters in election district No. 2, town of Jerusalem, that each of them, at that election, voted for member of Assembly, and they each cast their vote for John Underwood for member of Assembly, in district No. 2, in Jerusalem.
No. 4 consists of three separate papers pinned together.
The first is an affidavit of Andrew' B. Angus, taken before Samuel L. Millspaugh, a justice of'the peace for Yates county, on the 18th January, 1851, who says that he was poll clerk of election district No. 2, in the town of Jerusalem in said county at the general election held therein, on the fifth day of November, 1850, that he sawr the votes which were cast at the said election counted and canvassed ; that the name of Samuel Jayne, Jr., the democratic candidate for member of Assembly, was erased from several ballots' and no other name substituted therefor, and that, according to the best of his recollection, knowledge and belief, the number of ballots from which the *248 said Jayne’s name was erased, and no other name substituted therefor was four or five. ' , n
■ The second is an affidavit of David A. Thomas, taken before Almon S. Kidder, justice of the peace of Tates county, on the 20th January, 1851, who says that he attended the polls in election district No. 2, in the town of Jerusalem, on the 5th day of November, 1850 ; that he went there for the purpose of obtaining the election news, to carry the same to Penn Yan; that he kept a count of the votes as they were counted out of the ballot-box; that John Underwood had fifty-five split tickets for member of Assembly, that is to say, John Underwood received fifty-five democratic votes for member of Assembly, from which the name of Samuel Jayne, Jr., for the same office, had been erased, or otherwise obliterated, or had'been altogether omitted; that the whole number of whig ballots from which the name of John Underwood was erased, or in anyway obliterated, that he saw, was five; that he estimated the votes thus kept by him, and found that John Underwood had received, in said district, forty-two majority over said Jayne for said office, whereupon the doponent left with the said news and carried the same to his democratic friend in Penn Yan, and did so report on his arrival in Penn Yan.
The third is a paper in these words : “ Branchpoint, Yates county, N. Y., January 11, 1851. I, Phineas Parker, one of the inspectors of election in election district No. 2, in the town of Jerusalem, in the county of Yates, do hereby certify that I acted as one of the board of inspectors at the last election in said district, and that I am' well satisfied, after a careful examination, that the said board made a mistake in the canvass, against John Underwood, in said district, at said election.
P. PARKER.”
No. 5 consists of two affidavits, attached together by wafers.
The first is an affidavit of Phineas Parker, Harrison H. Gage and Rodney L. Adams, taken before, Samuel S. Millspaugh, a justice of the peace for the county of Yates, on the 18th of February (so it is-written), 1851, to the effect that on the 18th of January, 1851, they called on Franklin Ellsworth, town clerk of Jerusalem, and requested of him a certified copy of the poll list of election district No. 2, in Jerusalem, for the election held there on the 5th November, 1850; that Ellsworth said he had not a copy of the poll list in his possession and could not furnish a copy; and further, that he did not *249 remember to have bad the said poll list in bis possession at any time.
The second is an affidavit of Myron IT. Weaver and Phineas Packer, taken before the said Samuel S. Millspangh. on the 18th of January, 1851, to the effect that each had seen a copy.of the poll list ’of the persons who voted in election district No. 2, in the town of Jerusalem, Yates county, on the 5th November, 1850, in the possession of Franklin Ellsworth, town clerk of said town, -in the clerk’s office, since the general election held in said district on the 5th day of November aforesaid.
No. 6 is an affidavit of the said Phineas Parker, taken before the said Samuel S. Millspaugh, on the 21st January, 1851, in which he says that he was one of the inspectors of election in election district No. 2, in the town of Jerusalem, Yates county, at the general election held there on the 5th November, 1850; that he assisted at the count and canvass of the votes at the said election, and 'that the whole number of whig votes from which the name of John Underwood was erased, or in any manner obliterated, for member of Assembly, was five and no more.
No. Y is what purports to be the poll list of the general election held in election district No. 2, in the town of Jerusalem, in .the county of Yates, November 5, 1850, to which is attached the affidavit of Andrew B. Angus, the poll clerk, who says that-he kept it and that it is correct according to the best of his knowledge and belief; and an other affidavit of Phineas Parker, the inspector, to the same effect.
No other papers were produced to the committee by the petitioner, nor did he ask leave to produce any, or request further time for that purpose.
The sitting member then offered in evidence on his part a certified copy, from the county clerk’s office of Yates ■ county, duly authenticated, of the statement of the canvass of the votes given at the general election in November, 1850, at the election district No. 2, in the town of Jerusalem, from which it appears that the whole number of votes given for the office of member of Assembly was three hundred and fifty-seven, of which Samuel Jayne, Jr., received one hundred and seventy-eight, and John Underwood received one hundred and seventy-nine. This statement is signed by all three of the inspectors .of elections, and is in every respect conformable to the statute. Marked No. 9 by the committee.
Also, a certified copy, duly authenticated, of the statement of the *250 board of county, canvassers, in relation to member of Assembly, from which it appears that- the whole number of votes given for member of Assembly, in said county, at the general election held on the 5th November, 1850, was three thousand eight hundred and eighty-nine ; of which Samuel Jayne, Jr., received one thousand nine hundred and sixty; John Underwood received one thousand nine hundred and twenty-eight, and Samuel Jayns, Jr., received one. Marked No. 10 by the committee.
And also, a certified copy, duly authenticated, of the certificate of the election of member of Assembly, signed by the chairman and clerk of Alie bpard of county supervisors, by which it appears that Samuel Jayne, Jr., was by the greatest number of votes duly elected member of Assembly in and for said county of Yates. Marked No. 8 by the committee.
The undersigned have been thus particular in their statement of the contents of these papers for the reason that they constitute the only evidence, and every thing in the nature of or claimed to be evidence, submitted to them or for thir consideration by either of the parties, apd more especially because the chairman of their committee iuforms the undersigned that it is not his intention to annex the said paper to the majority report of the committee, or to submit them to this House.
Owing to the absence of Mr. Thompson, the committee, without determining what effect should be given to the papers, adjourned to the 31st January, 1851.
All the members of the committee being present at the adjourned day they proceeded to examine the papers produced by the petitioner. On such examination it appeared to the undersigned that all the papers offered by the petitioner, and marked from No. 1 to No. 7 inclusive, were inadmissible as evidence for any purpose. They are extra judicial. No indictment for perjury could be found on them if any individual subscribing them swore falsely. The undersigned wish, however, to be distinctly understood that they do not express or mean to. insinuate an opinion that the affidavits in question are false, but simply that being extrajudicial they are not, for this reason, entitled to credit as testimony. The paper marked No. 1 is merely equivalent to Mr. Kidder saying that (the persons named) told him that they voted for Mr. Underwood as member of Assembly at the election in question; some of the other papers are more specific, but tend to no other result than that the individuals subscribing them *251 assert that they voted for Mr. Underwood. In no point of view did they establish or make good the allegation contained in Mr. Underwood’s statement, “ that about fifty-five democratic votes were given for him and not counted by the inspectors.” That they did not, whatever effect might be given to them, malee out a prima facie case to show fraud, mistake or corruption, on the part of the inspectors of election district No. 2 in Jerusalem. Considered by themselves and without reference to the papers introduced by the sitting member, and so the undersigned submit they must be considered, it does not appear from them that any mistake prejudicial to the petitioner was made by the inspectors. It is true the certificate of Mr. Parker states that “he is well satisfied, after a careful examination, that the said board made a mistake in the canvass against John Underwood in said district at said election ; bnt uuless suspicion of fraud or corruption is cast on the proceedings of the inspectors, for aught that appears on these papers, that mistake, whatever it might have been, was instantly rectified bv the inspectors themselves. If it were not, why did Mr. Parker sign the return ? Every intendment and presumption is in favor of the good faith and legal correctness of the return made by the inspectors. They are sworn officers. The canvass made by them is a public canvass within the view necessarily of numerous individuals. No one swears in any of the papers that votes given for Mr. Underwood were not counted for him. If such were the fact, the petitioner could easily have produced the affidavit of Mr. t Parker, or Mr. Angus the clerk of the polls, or some other person to show it. lie does not choose to get any such affidavit, and the inference, in the minds of the undersigned, is irresistible, that no mistake was in fact made. To assume that a mistake was made is to nullify the official return of inspectors given under oath, and this the undersigned are unwilling to do. They feel it due to the officers attacked, that a charge which would convict them of gross remissness of duty, not to say criminality of conduct, should be most clearly and incontestably proven and hot left to inference. The party claiming the allowance of votes in opposition to the return of ¡the inspectors of the election, must show beyond all reasonable doubt his right to them, and that they were not allowed to him, by testimony positive and unequivocal. To adopt the language .of a former committee of this House in a case involving some principles directly applicable to the present one, “ he has no right to call upon the committee or this House to weigh or balance probabilities upon a cpiestion vitally affect *252 ing the elective franchise.” And if he lias no right to call on the undersigned to weigh probabilities he surely cannot require ns to infer criminality, fraud or corruption on such loose, vague and unsatisfactory papers as those produced. Mr. Parker cannot be said to be an unwilling witness, for he has made for the petitioner no less than four affidavits and given to him one certificate. Yet not one of these affidavits, nor does this certificate, impute fraud or corruption to the inspectors. They stand before us unimpeached.
But another, and in the opinion of the undersigned, a conclusive objection against receiving or considering the papers offered by the petitioner, is because the statute (1 R. S., 3d ed., p. 166, § 12, &c.) distinctly points out the mode by which any person desiring to contest the election of any member of this House, may take such testimony as he chooses in support of his claim. This mode was not followed by the petitioner, but entirely disregarded. The undersigned do not express the opinion that the statute regulating the taking of testimony in ejection cases overrides, or was intended to override the constitutional right of this House to he the sole judge of the election, qualification and return of its members. On the contrary, the undersigned believe that it is competent for this House to order the investigation to be made in any proper way, either by the examination of witnesses in the presence of a committee or under a commissioner, but surely this House will require, while acting asa judge, and in the course of proceedings essentially judicial, that the ordinary rules of law applicable to evidence shall be observed.
Tested by those rules, these papers would be rejected in a controversy about a sixpence before a justice of the peace. And this House, in a question of such magnitude as the right of a member to his seat, and through him the right of his constituents, to be represented- in this House, will, the undersigned believe, require at least the appearance of something like evidence, before they will either dissent or disturb one of their regularly returned members in the discharge of his public duties.
Besides, the undersigned cannot see what possible bearing the papers marked Ho. 4, Ho. 5, and Ho. 6 can have on this question; with the exception of the certificate given by Mr. Parker, and already considered by the undersigned, they seem to be wholly irrelevant and immaterial.
Entertaining these views, one of the undersigned moved before the committee the following resolution :
*253 Resolved, That this committee report to the Iionse by writing, all the papers in our possession introduced by Mr. Underwood, the contestant, and Mr. Jayne, the sitting member; and that it is the opinion of the committee that tire said contestant has wholly failed to establish, byTegal evidence, his claim to said seat.
This resolution was amended, the chairman giving the casting vote, by striking out all after the word member. The mover of the resolution then added to it the following words : “and that the committee be discharged from the further consideration of the subject.” On the question being taken the resolution was negatived, the chairman giving the casting vote.
It is now proposed that this House order the chairman and one other member of this committee to proceed to Yates county, for the purpose of taking such testimony as the petitioner may see fit to produce to them. It would be perhaps sufficient to say on this subject, that the statute already referred to gives to the petitioner ample power to take all the testimony he wishes, without subjecting the State to the expense, or your committee to the inconvenience, of going to Yates county on such an errand.
But the great, and, in the opinion of the undersigned, the insurmountable objection to the further prosecution of this matter by your -committee is, that the petitioner desires in effect, to substitute your committee in the ■ place of the inspectors of election — the only persons who could act understandingly in the premises — and ascertain by testimony how men voted. Without having the ballots before us, we are expected to ascertain their contents, fro.m the men who voted them, and thus grope toa conclusion adverse to the inspector’s return, by the worst possible means, or by an arithmetical calculation. This, in the opinion of the undersigned, no previous committee on elections of this house ever yet did. And it is obvious that it opens the door to so much and such wholesale perjury that the undersigned think it never ought to be permitted in any case. Issues as numerous as the votes cast will be presented betwen each voter, on one side, and the three inspectors, also under oath, on the other. It seems to be too monstrous to be even considered. The undersigned have investigated all the cases occurring in this House, which the limited time allowed them enabled them to examine, and no such rule was permitted in any of them.- On the contrary, they find this point to have been expressly, and, as they believe, correctly decided by the committee on privileges .and elections, on the petition of Abraham *254 Aker, claiming the seat of George J. Barber. (See Ass. Doc. for 1845, vol 1, No. 21.) Mr. Barber proved that an inhabitant of the town of Virgil voted for Barber by crossing Aker’s name from a democratic ticket and inserting Barber’s thereon, and that when the tickets were canvassed, no such ticket was found; but the committee, after carefully surveying the whole ground, were of the opinion, unanimously, that the point was not worthy of being entertained. Without having the ballots before us, how is it possible, we would ask, to be satisfactorily informed of their contents? Voters are frequently deceived as to their votes. It is probably within the experience of every member of this House, that voters think they are voting for one person, when in fact they are voting for his opponent. And in the case of illiterate men, it is very likely that they may have been imposed upon. But the current of authority in this State is strongly against going behind the ballot-boxes. (See Ass. Doc. for 1846, vol. 2, No. 45; ib., 1847, vol. 1, No. 16; ib., 1848, vol. 5, No. 14.) In one of these cases, Bishop Perkins and. Ira Harris, now a justice of the supreme court, were both on the committee, and they unanimously refused to go behind the ballot-boxes. It is true that, in the last contested case before this House (see Assemb. Doc. for 1850, vol. 4, No. 67), the committee resolved to depart from this safe and prudent rule; but in that case, the point involved was of a character totally different from the present. Here, neither fraud nor corruption is charged. No prima fade case, of mistake even, is made out. But without enlarging on this point further, we think that the statute, as before remarked, provides an ample remedy to the petitioner, without his asking the leave or requiring the aid of this House.
The documents introduced by the sitting member, arc, it should be remarked, perfectly regular on their face, and in the opinion of the undersigned, bear intrinsic evidence that no mistake was in fact made.
It is worthy of observation, too, and, perhaps, ought to be conclusive of the matter, that the proposed investigation, if it amounts to any thing, would probably result in the entire vote of the district in question, being rejected on account of the uncertainty in which the proof would involve the whole affair. It is not to be tolerated, that any member of this House should be entitled to a seat, in oposition to the certificated member, on any uncertainty; and if the votes of that district are rejected, Mr. Jayne, the sitting member, has, beyond all *255 doubt, mischance or peradventure, a clear and decided majority in the county.
The above is believed by t-lie undersigned, members of your committee, to be a fair statement of the facts of this case, and unless your honorable body should deem it proper to reject and disregard the returns of the inspectors, and order the taking of testimony to ascertain for whom all the voters of election district No. 2, in the town of Jerusalem, voted, at the last general election, for member of Assembly, they recommend the adoption of the following resolutions:
Resolved, That the petitioner, John Underwood, has wholly failed to establish, by legal evidence, his right to the seat claimed by him in this House.
Resolved. That the committee on privileges and elections be discharged from the further consideration of the petition, of John Underwood, claiming a seat in the Assembly from Yates county, now held by Samuel Jayne, Jr., without prejudice to the right of said Underwood to renew his claim to such seat if he shall present evidence to this House impeaching the return of the inspectors of election district No. 2, town of Jerusalem, Yates county.
JAMES MAURICE.
ALBERT A. THOMPSON.
Assembly Documents, 1851, vol. 3, No. 55. See Documents accompanying the report.
Ordered, that said report be printed.
Assembly Journal, 1851, vol. 1, page 343. See also Assembly Journal, 1851, vol. 1,3.
Speoial Committee Appointed.
In Assembly, February 24, 1851.
By unanimous consent Mr. Elderkin offered for the consideration of the House, a resolution in the words following, to wit:
Resolved, That Hon. John H. Wooster, be associated with the chairman of the committee on privileges and elections, in taking the testimony in case of the contested seat in this House, from the county of Yates.
Mr. Feller moved to amend, by adding IT.. J. Campbell, which amendment was accepted by Mr. Elderkin.
Mr. Speaker put the question whether the House would agree to the said resolution, and, it was determined in the affirmative.
Assembly Journal 1851, vol. 1, page 411.
*256 Committee Requested, to Report.
In Assembly, March 13, 1851.
Mr. W. F. Rnssell offered, for the consideration of the House, a resolution in the words following, to wit:
Resolved, That the select committee haying in charge the investigation of a contested seat in this House, between Messrs. Jayne and Underwood, of Tates county, be requested to report forthwith to this House, the result of their investigation.
Debate being had thereon.
Ordered, That said resolution be laid upon the table.
Assembly Journal 1851, vol. 1, page 564.
In Assembly, March 17, 1851.
Mr. J. F. Clark, called for the consideration of the resolution heretofore offered by W. F. Russell, in the words following, to wit:
Resolved, That the select comniittee having in charge the investigation of a contested seat in this House, between Messrs. Jayne and Underwood,-of Yates county, be requested to, report forthwith to this House the result of their investigation.
Mr. J. F. Clark moved to lay the said resolution upon the table.
Mr. Speaker put the question and it was determined in the affirmative.
Assembly Journal 1851, vol. 1, page 636.
In Assembly, March 27, 1851.
Mr. W. F. Russell moved to take from the table the resolution heretofore offered by him in the words following, to wit:
Resolved, That the committee appointed to take testimony in the case of the contested seat from Tates county, be instructed to report forthwith.
Mr. Speaker put the question, and it was determined in the affirmative.
Assembly Journal, 1851, vol. 1, page 718.
Report of Select Committee. — Mr. Jayne awarded Seat.
In Assembly, March 29, 1851.
By unanimous consent, Mr. Campbell from the committee (select)' on privileges and elections, to which was referred the papers in' relation to the contested seat from Yates county, reported in writing as follows, to wit:
*257 Report of the Select Committee appointed to Investigate the Claim of JohN Underwood, from the oouNty of Yates* to a Seat in this House.
The select committee appointed by the House, to take the testimony, and report in the matter of John Underwood, claiming a seat in the Assembly, as member from the county of Yates, in the place of Samuel Jayne, Jr., to whom the certificate of election was given, report that your committee proceeded to the county of Yates, and caused the witnesses, for and against the claim, to be brought before them, and their testimony is herewith submitted.
Your committee beg leave to say farther, that the principal ground upon which Mr. Underwood claimed the right to the seat, was, that the inspectors of election, in the second election district of the town of Jerusalem, had made a mistake in canvassing the votes of said district.
The committee, after hearing the testimony, and giving the matter a careful examination, are- of the opinion that the contestant, Mr. Underwood, was honest and sincere in the belief that a mistake had been made, and that he was justly and legally entitled to the seat; but the testimony shows conclusively, that he was mistaken and misinformed as to the true state of the facts of the case.
Your committee, would therefore, recommended the adoption of the following resolution:
Resolved, That-John Underwood is not entitled to a seat in this Assembly.
P. W. BISHOP.
JOHN II. WOOSTER.
II. J. CAMPBELL.
Assembly Documents, 1851, vol 1, No. 128. See Testimony Documents, at end of report; Doc. 1851, vol. 1, No. 128.
Mr. Speaker-put the question, whether the House would agree to the said resolution, and it was determined in the affirmative.